**Shaundra M. Schudmak**

| | |
|---|---|
| **From:** | Gretchen Liljeberg <gliljeberg@hstalaw.com> |
| **Sent:** | Monday, December 1, 2025 1:50 PM |
| **To:** | Shaundra M. Schudmak |
| **Subject:** | Pedro Castro-Rochez, et al v. Allied Trust |
| **Attachments:** | 2025-10-21 Petition for Damages - Clocked.pdf |

Counsel,

Attached please find a courtesy copy of the Petition for Damages filed in this matter.

Thanks,



**Gretchen Liljeberg**
Attorney
**Insurance Claim HQ; Hair Shunnarah Trial Attorneys; Insurance Claim Lawyers, Inc.**

504-684-5200    504-267-2036    gliljeberg@hstalaw.com

3001 17th St, Metairie, LA 70002    504-613-6351

insuranceclaimhq.com

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

`

1

**EXHIBIT A**

**40th JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. JOHN THE BAPTIST**

**STATE OF LOUISIANA**

NO.                                                                                                                    DIV. "    "

**PEDRO CASTRO-ROCHEZ and MIYERSI CASTRO-BONILLA**

**VERSUS**

**ALLIED TRUST INSURANCE COMPANY**

FILED: _____                           _____
                                                                                                     **DEPUTY CLERK**

St. John The Baptist
Filed Oct 21, 2025 11:01 AM
Deputy Clerk of Court
E-File Received Oct 21, 2025 10:24 AM

C-84496
C

**PETITION FOR DAMAGES**

**NOW INTO COURT,** through undersigned counsel, come Petitioners, Pedro Castro-Rochez and Miyersi Castro-Bonilla (hereinafter "Petitioners"), and file their Petition against Defendant, Allied Trust Insurance Company (hereinafter "Defendant" or "Allied"), respectfully averring as follows:

**I. PARTIES**

1. Made Plaintiff herein is **PEDRO CASTRO-ROCHEZ**, a person of the age of majority residing in Laplace, Louisiana.

2. Made Plaintiff herein is **MIYERSI CASTRO-BONILLA,** a person of the age of majority residing in Laplace, Louisiana.

3. Made Defendant herein is **ALLIED TRUST INSURANCE COMPANY**, an insurer domiciled in the State of Florida which is authorized to do and is doing business in the State of Louisiana and the Parish of St. John the Baptist, which may be served through its Registered Agent for Service of Process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

**II. JURISDICTION AND VENUE**

4. Jurisdiction is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure, Article 2.

5. Venue is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure Article 42, 43, and 76.

**III. RELEVANT FACTS**

1

6. At all times relevant hereto, Petitioners owned the Property located at 509 Welham Loop, Laplace, Louisiana 70068 (the "Property").

7. At all times relevant hereto, Defendant provided a policy of insurance, number 998803 (the "Policy"), to Petitioners which covered the Property against perils including hurricanes and provided the following coverages: $348,000 under Dwelling; $34,800 under Other Structures; $104,400 under Personal Property; and $34,800 under Loss of Use, *inter alia.*

8. On or about September 11, 2024, Hurricane Francine caused significant damage to Petitioner's Property, including damage to the exterior, roof, and interior ceilings as well as significant flood damage.

9. Petitioners initially noticed the damage to their interior and personal property caused by floodwaters, and made a claim with their flood insurance carrier, Allstate Insurance Company ("Allstate").

10. Petitioners used funds tendered by Allstate to repair flood damage to the Property from September through December of 2024, during which time they lived with family members.

11. When Petitioners moved back into their home in December 2024, they noticed water intrusion to the interior ceilings on the rear side of the Property.

12. Upon discovery of this damage, Petitioners promptly reported it to Allied on December 18, 2024.

13. Allied assigned the loss claim number 2416663 (the "Claim").

14. In response, Allied sent correspondence to Petitioners reserving its rights due to Petitioners' failure to report the loss immediately after it occurred, and requesting additional photos and videos concerning the Claim.

15. On or about December 26, 2024, Allied dispatched a field adjuster to inspect the Property.

16. Defendant's inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statute, La R.S. § 22:1892.

17. On January 20, 2025, Allied sent correspondence to Petitioners requesting additional photos and videos, and the date that Petitioners first noticed the interior water damage.

18. On February 11, 2025, Allied sent correspondence to Petitioners confirming its adjuster observed water related damage to the ceiling in the laundry room, garage, living room, and office. However, Allied denied coverage for the damage, in part due to aging, wear, tear, and deterioration to the roof, which had been installed two years prior in 2022. The letter

2

also alleged the water staining was discovered around the end of October 2024 and therefore was not reported within 14 days of discovery. Petitioners later testified under oath that the water staining was discovered in December 2024 and reported immediately upon discovery. Petitioners deny ever advising Allied's adjuster that the water staining was discovered in October.

19. On February 24, 2025, Allied sent correspondence to Petitioners reasserting the previous denial, and adding that its investigation was prejudiced due to the amount of time that lapsed from the date of loss and the date the claim was filed.

20. On February 25, 2025, Allied dispatched a second adjuster to inspect the Property.

21. Defendant's inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statute, La R.S. § 22:1892.

22. On February 27, 2025, Allied issued an estimate based on its inspections, valuing the covered interior damage at $2,536.83, below the Policy's $10,440 hurricane deductible. The first page of the estimate contains the note, "Revisions made by Gayle Strain." Gayle Strain, a "Complex Claims Examiner" employed by Allied, authored the February 24, 2025 correspondence, but the inspection upon which the estimate was based was performed by Jeff Althouse, an "Estimator" employed by Allied.

23. Following Allied's denial of the Claim, Petitioners retained engineering firm Superior Engineering to inspect the Property and create a Building Damage Assessment based on its findings.

24. Superior Engineering found that the modified bitumen roof at the rear of the Property, which had been installed in 2022, was damaged by Hurricane Francine, resulting in water intrusion to the rear side of the Property's interior. Superior Engineering further concluded that the water intrusion was not the result of deteriorated sealant on the windows above the modified bitumen roof.

25. On March 28, 2025, Allied dispatched engineering firm Forensic Engineering Company ("FEC") to inspect the Property and create a report with its findings. Contrary to Allied's previous assertions, FEC noted Petitioners were displaced from the house between September and December of 2024 and discovered water leaking through the ceiling of the laundry room, living room, and spare room (office) only upon their return in December. FEC found isolated scuffs randomly distributed across the modified bitumen roof, but

3

concluded the ceiling damage was caused by water infiltration through gaps in the window sealant at the second-story windows that predated Hurricane Francine. Petitioners dispute FEC's conclusion, which contradicts Superior Engineering's conclusion.

26. As a result of Defendant's failure to timely and adequately compensate Petitioners for their covered loss, they were forced to incur the expense of retaining counsel and other expenses to prosecute their claim.

27. Counsel for Petitioners retained public adjusting firm Ark Consulting Group ("Ark") to inspect the Property and create an estimate of the damages.

28. On or about May 23, 2025, Ark Consulting Group inspected the Property. In addition to the interior ceiling damage, Ark found torn shingles, wind-driven debris impacts to the roof, a missing tab on the roof, gutter damage, and siding damage. Ark documented $81,209.19 in damage to the dwelling.

29. On or about June 10, 2025, Petitioners noticed new water damage to the living room ceiling, an active leak which resulted in damage to personal property. Petitioners took photographs of the damage and placed a bucket under the leak to prevent any further damage to flooring or personal property.

30. On or about July 15, 2025, undersigned counsel submitted a demand for unconditional tenders to Allied, including the Superior Engineering report, the Ark Consulting Group estimate and photo report, and reported the newfound interior damage along with an inventory of the damaged personal property.

31. This submission constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statute, La R.S. § 22:1892.

32. In response, Allied retained counsel, requested Examinations Under Oath of both Petitioners, and made ten requests for additional information and documents.

33. On September 5, 2025, Allied took Examinations Under Oath of both Petitioners. At that time, both Petitioners asserted they discovered the damage in December 2024, no more than two weeks before reporting the damage to Allied.

34. To date, no insurance proceeds have been forthcoming.

35. As a result of Defendant's failure to timely and adequately compensate Petitioners for their substantial losses, the Property remains in a state of disrepair.

4

36. Because the Property remains in a state of disrepair, Allied issued a nonrenewal letter to Petitioners on September 5, 2025, stating "risk is not acceptable for underwriting reason."

37. Upon information and belief, Defendant's failure to timely and adequately compensate Petitioners for their loss, after receiving satisfactory proof of loss, was purposeful or at least negligent.

38. Upon information and belief, Defendant purposely and/or negligently misrepresented to Petitioners the terms and conditions of the Policy.

39. Upon information and belief, Defendant conducted the investigation and claims handling for Petitioners' Hurricane Francine claim in bad faith, as that term is used in conjunction with Louisiana's bad faith statute, La R.S. § 22:1892.

40. Petitioners have incurred or will incur additional living expenses as a result of the damages caused to their Property by Hurricane Francine, including those additional living expenses that will be incurred during the repair of the Property.

### IV. CAUSES OF ACTION

#### A. Breach of the Insurance Contract

41. Petitioners reallege and re-aver the allegations contained in the preceding paragraphs, above, as if restated herein.

42. An insurance contract, the Policy, exists between Petitioners and Defendant.

43. The Policy provides coverages for perils including hurricanes.

44. Despite having received satisfactory proof of loss for damages caused by Hurricane Francine, Defendant failed to timely tender adequate insurance proceeds as required by the Policy.

45. By failing to timely tender adequate insurance proceeds after having received satisfactory proof of a covered loss by way of its inspections, Defendant breached the Policy.

46. By failing to timely tender undisputed insurance proceeds after having received satisfactory proof of a covered loss by way of the Ark Consulting Group estimate, Defendant breached the Policy.

47. By failing to timely tender undisputed insurance proceeds after having received satisfactory proof of a covered loss by way of the Superior Engineering report, Defendant breached the Policy.

5

48. By purposely and/or negligently misrepresenting to Petitioners the terms and conditions of the Policy, Defendant breached the Policy.

49. By failing to conduct the claims handling for Petitioners' Hurricane Francine claim in good faith and with fair dealing, Defendant breached the Policy.

50. Petitioners have suffered and continue to suffer damages as a result of these breaches of the Policy.

### B. Bad Faith

51. Petitioners reallege and re-aver the allegations contained in the preceding paragraphs, above, as if restated herein.

52. The actions and/or inactions of Defendant in failing to timely and adequately compensate Petitioners for their covered losses under the Policy were arbitrary, capricious, and without probable cause—as those terms are used in conjunction with La. R.S. § 22:1892 - making Defendant liable for statutory bad faith penalties.

53. La. R.S. § 22:1892 imposes bad faith penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

54. Defendant is in violation of La. R.S. § 22:1892 for failing to provide Petitioners adequate payment in connection with their Hurricane Francine claim, despite having received satisfactory proof of loss following its own inspections of the Property and following its receipt of independent proofs of loss from Superior Engineering and Ark Consulting Group.

55. Defendant's misrepresentation of the relevant facts and/or the terms of the Policy was in bad faith.

56. Defendant's failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claims was in bad faith.

57. Defendant's failure to pay timely for damages it knew, or should have known, existed at the time it received the Superior Engineering report was in bad faith.

58. Defendant's failure to pay timely for damages it knew, or should have known, existed at the time it received the Ark Consulting Group estimate was in bad faith.

59. Defendant's handling of Petitioners' Claim was in bad faith.

### IV. DAMAGES

60. Petitioners reallege and re-aver the allegations contained in the preceding paragraphs, above, above, as if restated herein.

61. As a result of Defendant's breaches of contract, bad faith claims adjusting, and other bad acts, Petitioners have incurred the following, non-exclusive damages:

    a. Diminution of the value of the Property;

    b. Actual repair costs;

    c. Reimbursement for personal repairs at the Property;

    d. Actual costs related to personal property manipulation, cleaning, repair, and/or replacement;

    e. Additional living expenses;

    f. Mental anguish;

    g. Penalties delineated in La. R.S. § 22:1892; and

    h. Attorney's fees, other professional fees, and litigation costs associated with the bringing of this action.

## JURY DEMAND

62. Petitioners request a trial by jury.

**WHEREFORE,** Petitioners, Pedro Castro-Rochez and Miyersi Castro-Bonilla, pray that Defendant, Allied Trust Insurance Company, be served with a copy of this Petition and be duly cited to appear and answer the allegations contained therein, and that after expiration of all legal delays and proper legal proceedings, there be a judgment entered in favor of Petitioners, Pedro Castro-Rochez and Miyersi Castro-Bonilla, and against Defendant, Allied Trust Insurance Company, in an amount that will fully and fairly compensate Petitioners pursuant to the evidence and in accordance with the law, all sums with legal interest thereon, from the date of judicial demand until fully paid, for all costs of these proceedings, and for all general and equitable relief.

RESPECTFULLY SUBMITTED:

*Gretchen Liljeberg*
Galen M. Hair, La. Bar. No. 32865
Gretchen Liljeberg, La. Bar No. 40179
**HAIR SHUNNARAH TRIAL ATTORNEYS, LLC.
d/b/a INSURANCE CLAIM HQ
d/b/a INSURANCE CLAIM LAWYERS, INC.**

3001 17th Street
Metairie, Louisiana 70002
Telephone: 504.684.5200
Facsimile: 504.613.6351
hair@hairshunnarah.com
gliljeberg@hstalaw.com

**Please Serve:**

**Allied Trust Insurance Company**
*Through its Registered Agent of Service of Process:*
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809

63.