UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PEDRO CASTRO-ROCHEZ ET AL. | CIVIL ACTION |
| VERSUS | NO. 25-2431 |
| ALLIED TRUST INSURANCE COMPANY | SECTION "A" (5) |

**ORDER AND REASONS**

Before the Court is Defendant's **Motion to Stay Pursuant to L.A. R.S. 22:1892.2 and Extension of Responsive Pleading Deadline (Rec. Doc. 9).** Plaintiffs, Pedro Castro-Rochez and Miyersi Castro-Bonilla, oppose the motion. The motion, set for submission on January 21, 2026, is before the Court on the briefs without oral argument. For the following reasons, the Court **GRANTS** the motion.

    **I.    BACKGROUND**

On October 21, 2025, Plaintiffs filed this lawsuit seeking damages for losses allegedly caused by Hurricane Francine on September 11, 2024.[1] Hurricane Francine was declared a disaster by the President of the United States on September 16, 2024,[2] and the Governor of Louisiana declared a state of emergency on September 18, 2024, qualifying the event as a "catastrophic loss" under La. R.S. 22:1892(B)(1)(c) ("'Catastrophic loss' means a loss that arose from a natural disaster, windstorm, or significant weather-related event that was a presidentially declared emergency or disaster or a gubernatorially declared emergency or disaster.").

Before filing suit, on July 15, 2025, Plaintiffs provided Allied Trust Insurance Company ("ATIC") with their proof of loss, which included a detailed engineering report and an estimate

---

[1] Rec. Doc. 1-1, Pet. For Damages.
[2] FEMA-4817-DR; *see also* Presidential Declaration of a Major Disaster for the State of Louisiana, 89 Fed. Reg. 79680 (Sept. 30, 2024) (providing notice of the Presidential declaration of a major disaster in FEMA-4817-DR); La. Exec. Order No. JML 24-147 (September 18, 2024)

1

from Ark Consulting outlining the damages claimed.[3] Subsequently, Plaintiffs submitted to Examinations Under Oath ("EUOs"), during which they clarified that certain costs included in the initial demand letter were not related to Hurricane Francine.[4] On December 23, 2025, Defendant reached out to Plaintiffs' counsel to notify her that they had not complied with the cure period notice required by La. R.S. 22:1892.2 and therefore requested consent for a stay.[5] Plaintiffs responded that they did not consent to the stay and sent a letter identified as their "cure period notice."[6]

ATIC is now asking the Court to grant a stay and an extension of the responsive pleading deadline. La. R.S. § 22:1892.2 requires insureds to take certain actions as a condition precedent to bringing suit. ATIC contends that Plaintiffs did not comply with the statute by providing "sufficient notice of the current facts and circumstances of the dispute" before filing this lawsuit, and that their proof of loss letter is not a substitute for the cure period notice.[7] Plaintiffs contend that the July 15, 2025, demand package satisfied the statutory notice requirement, that ATIC waived its right to invoke the stay by its delay in notifying Plaintiffs of the defect, and that the Court should exercise its discretion to deny or limit the stay to prevent undue prejudice and unnecessary delay.

## II. APPLICABLE LAW

Prior to Hurricane Francine's landfall, the Louisiana State Legislature enacted reforms and amendments to the previous bad faith penalty statutes. *See* La. Act 3 of 2024 (SB 323) (effective July 1, 2024). The most pertinent addition is La. R.S. § 22:1892.2, which now governs claims for

---

[3] Rec. Doc. 10-1, July 15, 2025 Demand Package.
[4] Rec. Doc. 9-1, Memo. in Support of Mot. to Stay, at 2.
[5] Rec. Doc. 9-3, Letter Notifying Pls. of Noncompliance.
[6] Rec. Doc. 9-5, Cure Period Notice.
[7] Rec. Doc. 9-1 at 2.

catastrophic property losses, such as hurricane damage. The statute imposes new deadlines for insurers to issue payment following receipt of satisfactory written proof of loss. The insurer's failure to comply with these deadlines entitles the insured to recover a 50% penalty, plus proven economic damages, attorney's fees, and costs – provided the failure is found to be arbitrary, capricious, or without probable cause. L<small>A</small>. R.S. § 22:1892.2(B)(1). However, section 1892.2(C) also mandates a sixty-day "cure period notice" before the insured can file a bad faith suit seeking statutory penalties. This cure period notice requires the insured to provide a "formal written demand providing sufficient notice of the facts and circumstances of the dispute." L<small>A</small>. R.S. § 22:1892.2(C)(2). Importantly, "if any suit is filed prior to transmitting the cure period notice […] it shall be automatically stayed until sixty days after the cure period notice is received." And "the delay for answering any suit shall automatically be extended until thirty days after the end of the cure period."

Insurers have a major incentive to "cure" the alleged violation by paying the amount alleged in the proof of loss together with actual expenses and attorney's fees. If the insurer pays the full amount sought in the notice within sixty days, the insured has no further cause of action under section 1892.2, meaning that they cannot seek the 50% penalty otherwise available. If the insurer makes only a partial payment, the penalty on the amount paid is reduced by half. Although the issue of whether the insurer owes penalties if it does not tender payment within the statutory deadline is still a question for the fact finder, section 1892.2 gives insurers at least one avenue to avoid penalties as a matter of law.

### III.   DISCUSSION

The issue before the Court is whether Plaintiffs' July 15, 2025, letter to ATIC complied with the pre-suit parameters of La. R.S. § 22:1892.2. If not, the statute entitles ATIC to a sixty-

day stay and a thirty-day extension to file responsive pleadings. As a condition precedent to bringing suit, Plaintiffs must send "written notice of the violation," which the statute refers to as the "cure period notice." LA. R.S. § 22:1892.2(C)(1). The notice must be a formal written demand that contains "sufficient notice of the facts and circumstances of the dispute." LA. R.S. § 22:1892.2(C)(2). Plaintiffs argue that their original demand package "provided comprehensive information about the Hurricane Francine damages" in accordance with the statute's requirement. However, even if the letter satisfactorily represented the facts, it is still inadequate as a cure period notice because it only informed ATIC of the property damage, not of its violation of the statute. At the time of their July 2025 communication, ATIC had not previously received a written proof of loss which would trigger the sixty or ninety-day deadline for payment. As such, Plaintiffs could not have alleged that ATIC violated section 1892.2 because the deadlines for transmitting payment had not passed. Therefore, the Court finds that Plaintiffs' July 2025 demand package does not qualify as a "cure period notice" as described by section 1892.2 because it failed to notify ATIC of any "violation."

Plaintiffs argue that "it would be absurd to require a separate, additional notice beyond the comprehensive demand package provided." However, this is exactly what the statute requires. As Plaintiffs point out, "when interpreting statutes, Louisiana courts start with the language of the statute itself."[8] Section 1892.2 begins by describing the deadlines for transmitting payment after receipt of written proof of loss – within sixty days for residential properties and within ninety days for all other immovable property. Next, it describes the penalties owed if the insurer does not comply with those deadlines. Then, it states "[a]s a condition precedent to bringing an action pursuant to this Section, the insurer shall be given sixty days' written notice of the **violation** by

---

[8] Rec. Doc. 10 at 4.

the insured or his representative, hereinafter referred to in this Section as the 'cure period notice.'" LA. R.S. § 22:1892.2(C)(1) (emphasis added). When interpreting a law, the Court must presume "that every word, sentence or provision in a statute was intended to serve some useful purpose, […] and that the Legislature used no unnecessary words or provisions." *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 860 So.2d 1112, 1119 (La. 2003). It would be illogical to conclude, as Plaintiffs imply, that a "proof of loss" constitutes a "cure period notice" when the Legislature uses both terms in the same statute.

While there is a lack of jurisprudential guidance for interpreting La. R.S. § 22:1892.2, it is clear to the Court that Plaintiff's July 2025 letter, designated as a "proof of loss," does not qualify as a cure period notice.

Accordingly;

**IT IS ORDERED** that the **Motion to Stay and Extension of Responsive Pleading Deadline (Rec. Doc. 9)** filed by Defendant is **GRANTED**.

February 18, 2026

---
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE